UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MBIA Insurance Corporation and LaCrosse Financial Products, LLC, <br><br>                Plaintiffs, <br><br>          -against- <br><br> Royal Bank of Canada and RBC Capital Markets Corporation, <br><br>               Defendants. | 09 CIV 5044 (KMK) <br> ECF Case <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................4

      A.      The Summons with Notice Was Not Removable On Its Face................................4

      B.      Defendants Remove Based on Alleged Improper Joinder.......................................5

      C.      Plaintiffs' Proposed Complaint Alleges Valid Fraud, Negligent Misrepresentation, Promissory Estoppel and Contractual Claims Against Non-Diverse Defendant RBCCMC ....................................................................7

ARGUMENT ...........................................................................................................................11

I.      This Action Should Be Remanded Because the Summons with Notice Is Not an "Initial Pleading" Subject To Removal Under 28 U.S.C. § 1446(b) .................................11

II.     This Action Should Be Remanded Because Defendants Cannot Meet Their Heavy Burden of Demonstrating Improper Joinder ...................................................................13

      A.      Standard of Review..............................................................................................13

      B.      Defendants Cannot Satisfy Their "Heavy Burden" Here .....................................15

III.    MBIA Should Be Awarded Its Reasonable Fees And Costs Associated With Defendants' Notice Of Removal...................................................................................18

CONCLUSION........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bello v. CSX Corp.*,
No. 07 Civ. 2931 (KMK) (GAY),  2007 WL 2687626 (S.D.N.Y. Sep. 11, 2007).......... 19

*Bernstein v. Kelso & Co., Inc.*,
659 N.Y.S.2d 276 (1st Dep't 1997) ................................................................... 17

*Braddock v. Braddock*,
871 N.Y.S.2d 68 (1st Dep't 2009) ............................................................... 16, 17

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)............................................................................... 18

*Brine v. 65th St. Townhouse LLC*,
No. 602197/07, 2008 WL 3915784 (Sup. Ct. N.Y. County Aug. 20, 2008) ................... 16

*Century Pac., Inc. v. Hilton Hotels Corp.*,
No. 03. Civ. 8258 (SAS), 2004 WL 868211 (S.D.N.Y. Apr. 21, 2004).......................... 17

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
160 F.3d 925 (2d Cir. 1998)............................................................................... 13

*Emigrant Bank v. UBS Real Estate Secs., Inc.*,
854 N.Y.S.2d 39 (1st Dep't 2008) ...................................................................... 16

*ESPN, Inc. v. North Pole, Ltd.*,
No. 08 Civ. 9483 (CM), 2009 WL 176624 (S.D.N.Y. Jan. 22, 2009)............................ 14

*Frontier Ins. Co. v. MTN Owner Trust*,
111 F. Supp. 2d 376 (S.D.N.Y. 2000).................................................................. 14

*Furia v. Furia*,
498 N.Y.S.2d 12 (2d Dep't 1986)........................................................................ 17

*Horsehead Indus., Inc. v. Metallgesellschaft AG*,
657 N.Y.S.2d 632 (1st Dep't 1997) ................................................................. 2, 15

*Intershoe, Inc. v. Filanto S.P.A.*,
97 F. Supp. 2d 471 (S.D.N.Y. 2000)........................................................ 2, 14, 15, 16

*JP Morgan Chase Bank v. Winnick*,
406 F. Supp. 2d 247 (S.D.N.Y. 2005).................................................................. 17

*Leslie v. BancTec Serv. Corp.*,
928 F. Supp. 341 (S.D.N.Y. 1996)....................................................................... 14

*Loral Space & Commc'ns Holdings Corp. v. Rainbow DBS Holdings, Inc.,*
    No. 603175/05, 2007 WL 3236190 (Sup. Ct. N.Y. County May 2, 2007)......................15

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132 (2005)......................................................................................................18

*Matsumura v. Benihana Nat'l Corp.,*
    No. 06 Civ. 7609 (NRB), 2007 WL 1489758 (S.D.N.Y. May 21, 2007)........................18

*Matter of Sbarro Holding, Inc.,*
    456 N.Y.S.2d 416 (2d Dep't 1982)................................................................................15

*Moran v. Cont'l Cas. Co.,*
    1:01-CV-1008, 2001 WL 1717214 (N.D.N.Y. Nov. 16, 2001)...........................14, 15, 16

*Morgan Guar. Trust Co. of New York v. Republic of Palau,*
    971 F. 2d 917 (2d Cir. 1992).....................................................................................18, 19

*Nemazee v. Premier, Inc.,*
    232 F. Supp. 2d 172 (S.D.N.Y. 2002).............................................................................14

*Pampillonia v. RJR Nabisco, Inc.,*
    138 F.3d 459 (2d Cir. 1998)............................................................................................18

*Parker v. Mack,*
    61 N.Y.2d 114 (1984)......................................................................................................11

*Petrova v. Investors Capital,*
    No. 0033102/2008, 2009 WL 1456447 (Sup. Ct. Kings County May 20, 2009).............11

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,*
    314 F. Supp. 2d 177 (S.D.N.Y. 2003).............................................................................14

*Strawbridge v. Curtiss,*
    7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)....................................................................13

*U.S.E. Prod., Ltd. v. Marvel Enter., Inc.,*
    314 F. Supp. 2d 213 (S.D.N.Y. 2004)..................................................................1, 11, 12

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props.
    Meridien Square, Inc.,* 30 F.3d 298 (2d Cir. 1994) ........................................................13

*Whitaker v. Am. Telecasting, Inc.,*
    261 F.3d 196 (2d Cir. 2001)........................................................................5, 6, 11, 12, 14

## **STATUTES**

28 U.S.C. § 1332.................................................................................................................1, 13

28 U.S.C. § 1441(b) ...........................................................................................................1, 13

28 U.S.C. § 1446(b) ............................................................................................. 1, 10, 11, 12, 13

28 U.S.C. § 1447(c) ................................................................................................. 1, 4, 13, 18

CPLR § 3012(b) .......................................................................................................................5

## **OTHER AUTHORITIES**

14B Charles Alan Wright, *et al*., Federal Practice and Procedure § 3721 .................................... 13

Plaintiffs MBIA Insurance Corporation ("MBIA Insurance") and LaCrosse Financial Products, LLC ("LaCrosse") (collectively "MBIA"), by their attorneys Quinn Emanuel Urquhart Oliver & Hedges, LLP, respectfully submit this memorandum of law in support of their Motion to remand this action to the Supreme Court of the State of New York, Westchester County, pursuant to 28 U.S.C. §1447(c), on the ground that this matter was improperly removed by Defendants Royal Bank of Canada and RBC Capital Markets Corporation ("RBCCMC," and with Defendant Royal Bank of Canada, "Defendants") pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## PRELIMINARY STATEMENT

This action was commenced on May 22, 2009 in the Supreme Court of the State of New York, Westchester County, by filing a Summons with Notice.  Consistent with New York procedure, the "notice" provides a general description of the nature of the allegations and the relief sought, and in particular explains that this action arises from Defendants' improper marketing of and performance under three credit default swap contracts (the "CDS Contracts"). The face of the Summons with Notice does not reveal a basis for removal; to the contrary, it confirms that federal subject matter jurisdiction is lacking.  Both Plaintiffs and Defendant RBCCMC are citizens of New York; there is no allegation that would satisfy the amount in controversy requirement; and no federal claims are described.  As a result, the Summons with Notice does not qualify as an "initial pleading" that can be removed under 28 U.S.C. § 1446(b), Defendants' Notice of Removal was premature and the Court should remand the action on this basis alone, without even considering Defendants' allegations that Defendant RBCCMC was improperly joined.  *See U.S.E. Prod., Ltd. v. Marvel Enter., Inc.,* 314 F. Supp. 2d 213, 215 (S.D.N.Y. 2004) (remanding action where removal was premised on summons with notice which did not on its face reveal basis for removal).

1

Should the Court choose to reach the merits of Defendants' improper joinder argument, it should still remand the action, as Defendants cannot meet their heavy burden to demonstrate by clear and convincing evidence that "no possibility" exists that MBIA can allege a claim against RBCCMC.  *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000). Defendants' sole argument for removal is that RBCCMC cannot be a defendant on a breach of contract claim if it did not execute the contracts at issue.  Notice of Removal ¶¶ 13-16 (attached as Exhibit B to the accompanying Declaration of John H. Chun dated August 5, 2009 ("Chun Declaration")).  Not so.  Under well-established law, RBCCMC may be held liable for breach of contract based on its manifestation, through conduct, of an intention to be bound.  Such an intent can be shown, among other ways, by RBCCMC's central role in the negotiation of the relevant agreements.  *See, e.g., Horsehead Indus., Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632, 633 (1st Dep't 1997).  Defendants' narrow reading of the Summons with Notice—which gave no indication of being premised on Defendants' execution of the CDS Contracts—was utterly inconsistent with what they knew about RBCCMC's leading role in arranging and marketing the CDS Contracts to MBIA.  RBCCMC's marketing efforts, which included reserving for itself the right to enforce the CDS Contracts, made clear that RBCCMC's liability could be premised on its manifestation of an intention to be bound to the CDS Contracts.

This same conduct also gives rise to a promissory estoppel claim, based on RBCCMC's "arrang[ing] and market[ing]" of the deals at issue and its failed "promise[s]" to deliver securities with certain credit qualities.  Summons with Notice at 2 (attached as Exhibit A to the Chun Declaration).  As RBCCMC had made numerous representations and promises to MBIA during the course of negotiations, including through the preparation of deal documents and marketing materials which bore the imprint of its business name and logo, Defendants knew or at

2

least should have considered that promissory estoppel law supplied an additional, well-established basis upon which RBCCMC's liability could be premised. Thus, on the face of the notice itself, RBCCMC is a proper defendant and there is no basis for federal diversity jurisdiction.

Moreover, the claims against RBCCMC do not sound solely in contract or promissory estoppel. As Defendants well know, and would have known sooner had they demanded a copy of the Complaint before rushing prematurely to invoke this Court's jurisdiction, Plaintiffs also have alleged against RBCCMC well-pled claims of fraud, aiding and abetting fraud, and negligent misrepresentation arising from Defendants' false representations in connection with their marketing of the most recent of the three credit default swap agreements at issue, the Logan III CDS Contract. As detailed in Plaintiffs' proposed Complaint (attached as Exhibit C to the Chun Declaration),[1] RBCCMC was one of the principal architects of the fraudulent marketing materials and overall scheme to induce MBIA to enter into the Logan III CDS Contract through a series of materially false promises concerning, among other things, the performance of the two previous Logan deals and the quality of the collateral underlying Logan III.

Because of Defendants' premature removal, Plaintiffs cannot file the Complaint in state court, and the presence of non-diverse Defendant RBCCMC bars them from filing it now. This procedural quagmire, caused by Defendants' improper procedural maneuvering, should not prejudice Plaintiffs' right to have the improper joinder argument considered in light of the

---

[1] Pursuant to the Court's permission at the July 17, 2009 pre-motion conference and Rule II.B of the Court's Individual Rules, MBIA attaches a copy of the Complaint it intends to file should the Court grant its Motion to Remand. Since the delivery of a draft Complaint to Defendants on July 15, 2009, MBIA has added further detail to the Complaint, as well as an additional count (Count Three (Aiding and Abetting Fraud )). The allegations and claims in the Complaint against RBCCMC, as further described in this Motion, are materially identical to those set forth in the July 15, 2009 draft.

detailed allegations they have made.  Even if there were any question based on the Summons with Notice that federal jurisdiction was lacking, and there is none, a review of the proposed Complaint makes clear that RBCCMC is far more than "a nominal defendant, with no connection to the purported controversy, and against whom Plaintiffs cannot properly assert their claims in state court."  Notice of Removal ¶ 17.

For each of these reasons, Plaintiffs respectfully request that the Court remand this action to the Supreme Court of the State of New York, Westchester County, from which it was improvidently removed.  Because Defendants removed this action prematurely, with no basis for federal jurisdiction on the face of the Summons with Notice, and then declined to stipulate to remand in the face of the detailed allegations of the Complaint, Plaintiffs further respectfully submit that the Court should award Plaintiffs under 28 U.S.C. § 1447(c) their attorneys' fees incurred in preparing this Motion to Remand, which could easily and should have been avoided.

## BACKGROUND

### A.   <u>The Summons with Notice Was Not Removable On Its Face</u>

This case was commenced on May 22, 2009 with the filing of the Summons with Notice. On its face, the document reveals no basis for federal subject matter jurisdiction.   It does not describe any federal claims or any basis to satisfy the requirements for diversity jurisdiction.

The "notice" portion of the Summons with Notice explains that this action arises from three credit default swap contracts that were arranged and marketed by *both* Defendants. Summons with Notice at 2.  Plaintiffs explain that Defendants breached these agreements in various ways, including by (a) failing to deliver securities with the collateral quality they promised, resulting in losses at the inception of the contracts and increasing Plaintiffs' overall risk, and (b) after the securities suffered credit events, failing to comply with the contractually mandated conditions precedent to payment, including proper notice, verification, and valuation

4

procedures.  *Id.*  Plaintiffs generally describe the relief sought, including declaratory relief and damages resulting from Defendants' material breach of the CDS Contracts.  *Id.* at 2-3.  Thus, on the face of the Summons with Notice, Plaintiffs have described state common law claims.

It also is undisputed that the requirements for federal diversity jurisdiction are lacking on the face of the Summons with Notice.  Plaintiffs are MBIA Insurance and LaCrosse, both of whom are alleged to be citizens of the State of New York, as Defendants acknowledge.  Notice of Removal ¶¶ 8-9.  Defendant RBCCMC also is a citizen of the State of New York, as it has its principal place of business here.  *Id.* ¶ 11.  Defendant Royal Bank of Canada is incorporated under the laws of Canada, and has its principal place of business in Montreal, Canada.  *Id.* ¶ 10.[2] The description of the relief sought does not set forth a figure that would satisfy the amount in controversy requirement.  In short, the face of the Summons with Notice does not reveal any basis for removal.

## B.    Defendants Remove Based on Alleged Improper Joinder

Upon service of the Summons with Notice, Defendants had a right to demand a copy of the Complaint, which MBIA would have been obligated to provide within 20 days.  *See* CPLR § 3012(b).[3]  Rather than avail themselves of this right, however, six days after the filing of the

---

[2]   In addition to Defendants Royal Bank of Canada and RBCCMC, which were named defendants in the Summons with Notice, the Complaint asserts claims against Royal Bank of Canada Europe Limited ("RBC Europe") which, like RBCCMC, is a wholly-owned subsidiary of Defendant Royal Bank of Canada, and which also arranged and marketed the CDS Contracts. RBC Europe is located in London and registered to do business in England and Wales. Complaint ¶ 29.  Because RBCCMC is the non-diverse entity relevant to this Motion and because MBIA's allegations against both defendant subsidiaries are materially identical, MBIA limits its discussion in this Motion to RBCCMC and Royal Bank of Canada.

[3]   Because removability was not ascertainable on the face of the Summons with Notice, a demand for the Complaint would not have prejudiced Defendants' right to seek removal once the Court's diversity jurisdiction became clear.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001) (holding that because "removability could not have been ascertained from

Summons with Notice, Defendants filed a Notice of Removal.  Defendants do not dispute that diversity is lacking on the face of the Summons with Notice.  They contend, however, that this action only alleges claims for breach of contract, and that Defendant RBCCMC is improperly joined because it "is not a party to any of the agreements out of which Plaintiffs' breach of contract claims purportedly arise."  Notice of Removal ¶ 16.  As Defendants either knew or should have known, that is plainly not the case.

Plaintiffs allege that RBCCMC is liable for breach of the CDS Contracts under *Horsehead* and its progeny because it manifested an intent to be bound to those agreements through the leading role it played in their marketing and negotiation.  *See infra* Part II.B. Defendants no doubt are fully familiar with the conduct giving rise to this basis for contract liability, including, among other things, RBCCMC's preparation and presentation to MBIA of Preliminary Investor Presentations (commonly referred to as "Pitchbooks") for each of the Logan deals.  Complaint ¶¶ 43-44.  As alleged in the proposed Complaint, the Logan Pitchbooks described RBCCMC as part of the group that conducted all of the "international corporate and investment banking business" of Royal Bank of Canada.  *Id.* ¶ 39.  RBCCMC represented on the first page of the Logan Pitchbooks that it was the real party in interest to the CDS Contracts, stating that "RBC" (which acronym was defined to include RBCCMC but not Royal Bank of Canada) reserved the right to take "actions under the credit default swap(s) . . . ."  *Id.* ¶ 44.

Moreover, the marketing of the CDS Contracts was undertaken by RBCCMC executives located in New York who identified themselves as employees of RBCCMC.  *Id.* ¶ 43. RBCCMC's business name and logo appear on each of the pages of the Pitchbooks and other marketing materials provided to MBIA.  RBCCMC's name and logo also appear on the first page

the face of [the] summons with notice," it did not trigger § 1446(b)'s 30-day deadline for removal upon service of an "initial pleading").

of the Confirmations for the Logan I and Logan III CDS Contracts. *Id.* ¶ 44. RBCCMC was or at least should have been well aware that its active and leading role in the contract negotiations would give rise to potential breach of contract liability based on a manifestation of its intent to be bound.

RBCCMC also should have been aware that it could be liable under promissory estoppel law. As alleged in the Summons with Notice, among other things, RBC "promised" to deliver securities with a certain credit quality, but "instead arranged reference collateral pools which securities carried embedded losses at inception." This is an independent theory of liability that does not depend on RBCCMC's execution of the CDS Contracts.

### C.   Plaintiffs' Proposed Complaint Alleges Valid Fraud, Negligent Misrepresentation, Promissory Estoppel and Contractual Claims Against Non-Diverse Defendant RBCCMC

As part of this Court's mandated pre-filing conference procedures, on July 15, 2009, MBIA presented Defendants with a copy of the proposed Complaint it would have served had Defendants only asked before filing their premature Notice of Removal.[4] Contrary to the central premise of the Notice of Removal – that the only claims against RBCCMC are for breach of contract – the Complaint does not solely allege contract claims. Instead, MBIA has alleged claims against RBCCMC for fraud, aiding and abetting fraud, negligent misrepresentation, and promissory estoppel in connection with the marketing of the Logan III CDO. Complaint ¶¶ 113-44, 163-66. In addition, consistent with the Summons with Notice, MBIA alleges that RBCCMC, through its conduct, manifested an intent to and became bound to the CDS Contracts, and is therefore liable for their breach. *Id.* ¶¶ 145-62.

---

[4]   Defendants initially attempted to file a Motion to Dismiss, along with a purported Answer and Counterclaims, even though no Complaint had been filed. This Court rejected the Motion to Dismiss for failure to comply with its pre-filing conference requirements and stayed, until further notice, the deadline for MBIA's response to the Answer and Counterclaims.

In support of the fraud and negligent misrepresentations claims, the proposed Complaint alleges that beginning in late 2006 through 2007, RBCCMC, along with Defendant Royal Bank of Canada, embarked on a scheme to transfer their exposure to underperforming assets on their trading book by repackaging some of them into the Logan III CDO and inducing MBIA to issue credit protection against their risk of default. *Id.* ¶¶ 55-57.  MBIA presented an inviting target for Defendants' scheme as the parties had forged a relationship of trust and confidence over the course of previous deals, including the Maple VII and Maple XVI CDO deals, which closed respectively in 2001 and 2002, and the Logan I and II deals, which closed in September 2005 and May 2006, respectively. *Id.* ¶¶ 4-7, 46.  As a result of these prior transactions, Defendants knew of MBIA's strict credit criteria and its policy of issuing credit protection for only the most conservative, risk-remote investments. *Id.* ¶¶ 46-48.

The Logan III Pitchbook prepared and presented by RBCCMC contained numerous representations about Defendants' expertise in arranging and managing CDOs, their rigorous collateral selection criteria and the high credit quality of Logan III's securities. *Id.* ¶¶ 10-11, 60-68.  Defendants' representations included that (a) the overall credit quality of the collateral underlying Logan III was "high grade;" (b) MBIA would be protected from loss by subordination protection (referred to in the deals as "Participation Thresholds") of $225 million; (c) as of March 31, 2007, Logan I and II were performing "within expectations" and had sustained no appreciable loss in value; (d) the Logan III CDS Contract had been assigned a credit rating of AAA/Aaa, which reflected its true creditworthiness; and (e) the past performance of securities comparable in credit quality to the securities in Logan III exhibited extremely low

default, impairment and loss severity rates. *Id.* ¶ 58.[5] Defendants' promises to deliver "high grade" collateral and Participation Threshold protection of $225 million were incorporated into the Logan III CDS Contract. *Id.* ¶ 18.

The Complaint alleges that each these representations were false. Following the closing of the Logan III CDS Contract, in view of its extraordinarily poor performance, MBIA commissioned a valuation of Logan III as of its closing on June 21, 2007, and a valuation of Logan I and II as of March 31, 2007. Those valuations revealed that on the date of its closing, Logan III's collateral (a) was not "high grade" but more akin to junk grade debt; (b) carried embedded losses that wiped out the promised Participation Threshold protection and subjected MBIA to an immediate risk of loss; (c) could not support AAA/Aaa ratings for the Logan III CDS Contract; and (d) was not comparable at all to conservative risk-remote securities which exhibited low rates of default, impairment and loss severity. *Id.* ¶ 16. Furthermore, by March 31, 2007, Logan I and II had sustained alarming losses amounting to tens of millions of dollars and neither were performing "within expectations" for a "high grade" deal. *Id.* ¶¶ 80-81.

As Defendants knew and intended, MBIA relied upon the represented credit quality of Logan III and inflated representations about Logan I and II's performance, and each of these representations were material to MBIA's agreement to enter into the Logan III CDS Contract.

---

[5]  The Complaint further alleges that Defendants were required, but failed, to disclose to MBIA their superior knowledge of the Logan CDOs' true deteriorated value. Complaint ¶¶ 125-26, 142. Defendants' duty to disclose arose from (a) Defendants' expertise as arranger, manager and broker-dealer of the Logan CDOs, which collateral was sourced from Defendants' trading book, *id.* ¶ 123; (b) their access to loan-level performance data which gave them "real-time" information about the declining performance of the hundreds of thousands of mortgages re-securitized by each of the Logan deals, *id.* ¶¶ 72-76; (c) their longstanding relationship of trust and confidence with MBIA, which was forged over the course of four prior deals (the prior Logan deals as well as the Maple VII and XVI deals) dating back to 2001, *id.* ¶¶ 4-7, 46; and (d) their sale of the Logan III deal, which was pitched primarily on misleading partial representations about Logan III's purported "high grade" credit quality and market performance of Logan I and II as of March 31, 2007, *id.* ¶¶ 11, 126-28.

*Id.* ¶¶ 11, 126-28.  Had MBIA not been misled by Defendants, or had Defendants disclosed the true facts about the embedded losses in the Logan deals, it would not have entered into the Logan III CDS Contract.  *See, e.g., id.* ¶ 118.

The Complaint also elaborates on the allegations in the Summons with Notice that Defendants issued Credit Event Notices that failed to comply with, and resulted in breaches of, the terms of the CDS Contracts including, without limitation, Defendants' failure to: (a) properly serve and notify Plaintiffs of the credit events; (b) provide contractually required information and verification of credit events; and (c) conduct proper dealer polling following credit events in accordance with valuation procedures in the CDS Contracts.  *Id.* ¶¶ 92-107. RBCCMC is alleged to have participated in the conduct giving rise to these breaches, including through the delivery of defective credit event notices and accompanying information, and is liable for these breaches based on its manifestation of intent to be bound to the CDS Contracts. *Id.* ¶¶ 147, 156.

Based on these allegations, as more fully set forth in the proposed Complaint, MBIA alleges claims against non-diverse Defendant RBCCMC for fraud, aiding and abetting fraud, negligent misrepresentation, breach of contract and promissory estoppel in connection with the Logan III CDS Contract.  *Id.* ¶¶ 113-53, 163-66.  The Complaint separately asserts a breach of contract claim against Defendants based on their failure to comply with conditions precedent to the payment of claims under each of the Logan CDS Contracts.  *Id.* ¶¶ 154-62.

In view of these allegations, which make clear that RBCCMC is a proper party to this case, MBIA asked Defendants to stipulate to remand.  Defendants refused to do so.

**ARGUMENT**

**I.     THIS ACTION SHOULD BE REMANDED BECAUSE THE SUMMONS WITH NOTICE IS NOT AN "INITIAL PLEADING" SUBJECT TO REMOVAL UNDER 28 U.S.C. § 1446(B)**

The federal removal statute precludes removal until receipt of an "initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b). Because the Summons with Notice in this case does not constitute an "initial pleading," removal was premature and the case should be remanded.

Under New York law, a Summons with Notice is not a "pleading."  Apart from giving a defendant basic information about the nature of plaintiff's claims, it has no legal effect except in cases of default.  *See Parker v. Mack*, 472 N.Y.S.2d 882, 883 (1984) (summons with notice provides defendants with the "basic information concerning the nature of plaintiff[s'] claim[s] and the relief sought"); *Whitaker*, 261 F.3d at 202-03.  Indeed, there is no requirement that a plaintiff plead the elements of its causes of action in the summons with notice and New York courts accordingly have rejected attempts to dismiss them.  *See Petrova v. Investors Capital*, No. 0033102/2008, 2009 WL 1456447, at *1-2 (Sup. Ct. Kings County May 20, 2009) (holding, in view of its highly limited purpose, that a summons with notice could not be challenged by a motion to dismiss as there were no "factual allegation[s] to review so as to permit [the court] to determine whether plaintiffs have any cognizable cause of action").

Consistent with its limited function and purpose, federal courts in this Circuit have recognized that a summons with notice does not constitute an "initial pleading" for purposes of removal under 28 U.S.C. § 1446(b) unless "defendant is able to 'intelligently ascertain' removability *from the face of the summons*."  *U.S.E. Prods., Ltd. v. Marvel Enter., Inc.*, 314 F. Supp. 2d 213, 215 (S.D.N.Y. 2004) (emphasis added) (citing *Whitaker*, 261 F.3d at 205); *see id.*

11

at 215 ("[C]ourts look *only to the face of the summons with notice* to determine whether it will

serve as the initial pleading, or whether the complaint will be considered the initial pleading.")

(emphasis added).  In considering whether the "initial pleading" requirement is met, courts will

consider, among other things, whether the diversity of the parties' citizenship and the amount in

controversy may be ascertained from the face of the summons with notice.  *See id.*; *Whitaker*,

261 F.3d at 206 ("In cases where removal is based upon diversity, the facts required to support

the removal petition include the amount in controversy and the address of each party.").  If not,

this Court has sensibly held that the summons with notice does not constitute an "initial

pleading" and is not removable under § 1446(b).  *See U.S.E. Prods.*, 314 F. Supp. at 215.

> *U.S.E. Productions* involved circumstances virtually indistinguishable from those here,

and demonstrates that remand is required.  The summons with notice in that case asserted state

law claims against a non-diverse defendant, including claims for breach of contract and tortious

interference.  Like RBCCMC here, Defendant Marvel Enterprises removed based on the

summons with notice, alleging that one of the plaintiffs was fraudulently joined to defeat

diversity.  Like RBCCMC's argument here, Marvel's argument was premised on the contract it

presumed formed the basis for Plaintiffs' claims, which it identified in its removal petition.  *Id.* at

214.  Nevertheless, because the basis for diversity jurisdiction was not evident on the face of the

summons with notice, the Court remanded the action:

> From the face of this summons with notice, the basis for removability is far from
> ascertainable because it identifies Plaintiffs and Marvel as both residing in New
> York and it states two state law causes of action.  Accordingly, it does not qualify
> as an "initial pleading" for purposes of 28 U.S.C. § 1446.  Marvel's petition is
> therefore premature.

*Id.* at 215.

> Here, as in *U.S.E. Productions*, removability is not ascertainable on the face of the

Summons with Notice.  As MBIA Insurance and LaCrosse, on the one hand, and RBCCMC, on

the other, are New York citizens, complete diversity does not exist among the named parties to the state court action.  Notice of Removal ¶¶ 8-9, 11.  Moreover, the Summons with Notice alleges only state law claims against Defendants and specifies no amount in controversy for purposes of determining whether the jurisdictional minimum amount of $75,000 is satisfied under 28 U.S.C. § 1332.  Thus, because removability cannot be ascertained on its face, the Summons with Notice does not constitute an "initial pleading" which may be removed under 28 U.S.C. § 1446(b) and this Motion should be granted without reaching Defendants' improper joinder claim.

## II.    THIS ACTION SHOULD BE REMANDED BECAUSE DEFENDANTS CANNOT MEET THEIR HEAVY BURDEN OF DEMONSTRATING IMPROPER JOINDER

Should the Court reach the question of RBCCMC's alleged improper joinder, Defendants cannot meet their heavy burden of demonstrating on the pleadings that "no possibility" exists of MBIA's assertion of state law claims against RBCCMC.

### A.    Standard of Review

It is axiomatic that this Court may exercise diversity jurisdiction only where the citizenships of the adverse parties are completely diverse.  *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).  Even if complete diversity exists (which it does not in this case), removal based on diversity is barred if any of the defendants is a citizen of the state where the action is brought.  *See* 28 U.S.C. § 1441(b); 14B Charles Alan Wright, *et al*., Federal Practice and Procedure § 3721 ("In diversity of citizenship suits the privilege of removal . . . is available only if none of the defendants is a citizen of the state in which the action is brought.").

Where, as here, defendants' invocation of the Court's diversity jurisdiction is improper, plaintiffs may move at any time to remand the case for lack of subject matter jurisdiction.  28

U.S.C. § 1447(c).  In opposition to the motion to remand, defendants bear the heavy burden of establishing that removal was proper.  *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meridien Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court . . . ."); *Frontier Ins. Co. v. MTN Owner Trust*, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000) (removal jurisdiction "is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum").  At a minimum, defendants must establish that all conditions for removal have been met and "all doubts should be resolved in favor of remand."  *Leslie v. BancTec Serv. Corp.*, 928 F. Supp. 341, 347 (S.D.N.Y. 1996) (internal quotation marks and citation omitted); *see also ESPN, Inc. v. North Pole, Ltd.*, No. 08 Civ. 9483 (CM), 2009 WL 176624, at *2 (S.D.N.Y. Jan. 22, 2009) ("[T]he party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." (internal quotation marks and citation omitted)).

The burden on the non-moving party is particularly acute in cases alleging jurisdiction based on improper joinder.  When a non-diverse defendant alleges that it has been improperly joined in the action, the defendant must demonstrate, by clear and convincing evidence, "that *there is no possibility*, based on the pleadings," that plaintiffs can state a cause of action against the defendant in state court.  *Intershoe*, 97 F. Supp. 2d at 474 (emphasis added) (internal quotation marks and citation omitted).[6]  Because this jurisdictional inquiry is preliminary to any

---

[6]   *See also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003) ("A defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case" but must demonstrate that defendant's liability is a legal impossibility under state law (internal quotation marks and citation omitted)); *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) (noting that "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted" (citing *Whitaker*, 261 F.3d at 207)); *Moran*

consideration of the merits, the Court resolves all factual and legal questions regarding applicable state law in plaintiffs' favor and subjects the plaintiffs' allegations to "less searching scrutiny than on a motion to dismiss for failure to state a claim." *Id.* (finding sufficient a complaint that colorably asserted a claim for malicious prosecution even though the plaintiff had "mislabeled" the allegation as prima facie tort); *Moran*, 2001 WL 1717214, at *3.

**B.** **Defendants Cannot Satisfy Their "Heavy Burden" Here**

The sole premise of RBCCMC's allegation of improper joinder is that Plaintiffs have alleged only breach of contract claims, and RBCCMC is not a party to any of the contracts at issue.  Notice of Removal ¶¶ 12-17.  RBCCMC has chosen to give a self-serving and unduly narrow reading to the Summons with Notice, but that reading is not consistent with either the basis for liability on the claims for breach of contract, or the scope of the claims Plaintiffs are alleging against RBCCMC.

As explained above, the Summons with Notice generally describes contractual claims against RBCCMC arising under the CDS Contracts.  RBCCMC's liability, however, is premised on its conduct through which it manifested an intent to be bound.  This conduct includes, among other things, the central role it played in the negotiation of the CDS Contracts; its reservation of rights in the Pitchbooks to enforce the CDS Contracts; the imprint of its business name and logo on the Pitchbooks, Confirmations and marketing materials; and its participation in conduct giving rise to breaches under the CDS Contracts, including the delivery of defective credit event and accompanying notices.  This is a valid basis for non-signatory breach of contract liability

---

*v. Cont'l Cas. Co.*, No. 1:01 Civ. 1008, 2001 WL 1717214, at *4 (N.D.N.Y. Nov. 16, 2001) (noting that defendants "in removing this summons with notice, which is not on its face defective nor removable, have shouldered a heavy burden to demonstrate by clear and convincing evidence that there is *no possibility* that plaintiffs can state a cause of action against the non-diverse defendants in state court" and remanding to state court) (emphasis added)).

under New York law.  *See Horsehead Indus., Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632,

633 (1st Dep't 1997); *Loral Space & Commc'ns Holdings Corp. v. Rainbow DBS Holdings, Inc.*,

No. 603175/05, 2007 WL 3236190, at *1 (Sup. Ct. N.Y. County May 2, 2007); *Matter of Sbarro*

*Holding, Inc.*, 456 N.Y.S.2d 416, 417 (2d Dep't 1982).

The Summons with Notice also references promises RBCCMC made regarding, among

other things, the quality of the collateral underlying the CDS Contracts, and RBCCMC's failure

to honor those promises gives rise to independent liability on a theory of promissory estoppel.

*See Braddock v. Braddock*, 871 N.Y.S.2d 68, 77 (1st Dep't 2009); *Emigrant Bank v. UBS Real*

*Estate Secs., Inc.*, 854 N.Y.S.2d 39, 41 (1st Dep't 2008) (denying motion to dismiss promissory

estoppel cause of action); *Brine v. 65th St. Townhouse LLC*, No. 602197/07, 2008 WL 3915784,

at *6 (Sup. Ct. N.Y. County Aug. 20, 2008).

Plaintiffs' claims against RBCCMC do not sound in contract or promissory estoppel

alone, however.  As explained above, Plaintiffs are bringing claims against RBCCMC sounding

in tort – fraud, aiding and abetting fraud, and negligent misrepresentation – based on

RBCCMC's central role in the scheme to induce Plaintiffs to invest in the Logan III CDS

Contract through a series of materially false promises concerning, among other things, the

performance of the two previous Logan deals and the quality of the collateral underlying Logan

III.  These claims fall within the general description in the Summons with Notice, particularly in

view of the liberal rules for construing this preliminary filing.  *See supra* Part I.  Accordingly,

considering the Summons with Notice alone, RBCCMC cannot satisfy its heavy burden to

demonstrate by "clear and convincing evidence" that there is "no possibility, based on the

pleadings, that plaintiffs can state a cause of action" against RBCCMC in state court.  *Moran*,

2001 WL 1717214, at *4; *see Intershoe*, 97 F. Supp. 2d at 474.

16

In the event the Court has any question in reviewing the Summons with Notice, Plaintiffs respectfully submit that it should consider the allegations of the proposed Complaint which it permitted Plaintiffs to submit in connection with this Motion.  Plaintiffs have not yet had an opportunity to file their Complaint.  They could not do so in state court because of Defendants' premature removal, and they cannot do so now because the presence of non-diverse Defendant RBCCMC deprives this Court of subject matter jurisdiction.  This procedural twilight zone Defendants have created – depriving Plaintiffs of the ability to file their Complaint in any court – should not prejudice Plaintiffs' right to have the improper joinder issue adjudicated in light of the allegations they are prepared to make against RBCCMC.

Reviewing the proposed Complaint, there can be no question that RBCCMC is a proper Defendant and that this Court lacks subject matter jurisdiction.  Each of the required elements of the fraud (primary and aiding and abetting liability), negligent misrepresentation, breach of contract and promissory estoppel claims has been alleged.[7]  RBCCMC is by no means a

---

[7]   Fraud requires a representation of a material fact, falsity, scienter, justifiable reliance by plaintiff and injury.  *See Bernstein v. Kelso & Co., Inc.*, 659 N.Y.S.2d 276, 281 (1st Dep't 1997).  A claim for fraudulent omission arises when a defendant violates a duty to disclose, such as where the defendant (a) has superior knowledge of the transaction, not readily available to the other party, and knows of the other party's reliance on mistaken knowledge; (b) makes a misleading partial disclosure; or (c) stands in a fiduciary or confidential relationship with the other party.  *See Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258 (SAS), 2004 WL 868211, at *9 (S.D.N.Y. Apr. 21, 2004).  To allege liability for aiding and abetting fraud, the plaintiff must allege "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (internal quotation marks and citations omitted).  A claim for negligent misrepresentation arises when the defendant violates a duty to impart correct information, such as where the defendant has special or unique expertise or a relationship of trust and confidence with the other party to the transaction.  *See Century Pac., Inc.*, 2004 WL 868211, at *8.  The elements of a breach of contract claim are the existence of a contract, consideration, performance by the plaintiff, breach by the defendant, and damages.  *See, e.g., Furia v. Furia*, 498 N.Y.S.2d 12, 13 (2d Dep't 1986).  A claim for promissory estoppel arises when a party makes promises upon which it is

"nominal defendant, with no connection to the purported controversy."  Notice of Removal ¶ 17.
Defendants' claim of improper joinder must fail and complete diversity of citizenship among the
parties, as required for diversity jurisdiction, does not exist.  Accordingly, this Motion should be
granted.[8]

### III.    MBIA SHOULD BE AWARDED ITS REASONABLE FEES AND COSTS ASSOCIATED WITH DEFENDANTS' NOTICE OF REMOVAL

There was no basis for removal, nor any reason why MBIA and the Court should have
been burdened with this motion.  At every juncture, Defendants have chosen to pursue a
frivolous removal effort notwithstanding that the allegations in the Summons with Notice and
Complaint defeat the very premise of that strategy.  Defendants could have demanded a copy of
the Complaint before filing the Notice of Removal; they chose not to do so.  Defendants could
have stipulated to remand after seeing the Complaint during the pre-filing conference procedure;
they chose not to do so.

Defendants have needlessly forced MBIA to bring this motion, and have required this
Court to spend time considering it.  Because this all could and should have been avoided, MBIA
respectfully submits that the Court should exercise its discretion and order Defendants to pay
MBIA's "just costs and any actual expenses, including attorney fees, incurred as a result of the

---

foreseeable that the other party will rely to its detriment.  *See Braddock*, 871 N.Y.S.2d at 77 (1st
Dep't 2009).

[8]  The cases upon which Defendants rely in their Notice of Removal do not support a
finding of federal jurisdiction.  In both *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir.
1998), and *Matsumura v. Benihana Nat'l Corp.*, No. 06 Civ. 7609 (NRB), 2007 WL 1489758
(S.D.N.Y. May 21, 2007), plaintiffs' complaints failed, on their face, to allege the necessary
elements of the claims asserted against the non-diverse defendants.  *See Pampillonia*, 138 F.3d at
462; *Matsumura*, 2007 WL 1489758, at *3-4.  In *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004), the court in fact *reversed* a lower court finding of improper joinder,
because defendants had failed to demonstrate that plaintiffs could not allege state law claims
against the non-diverse defendant and the district court had no grounds to overlook the non-
diverse defendant's citizenship or dismiss plaintiff's claims against the non-diverse defendant.
*Id.* at 303.

removal." 28 U.S.C. § 1447(c); *see Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (absent unusual circumstances, a court may award attorneys' fees and costs when the removing parties had no objectively reasonable basis to do so); *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) (granting costs and fees where defendants failed to acknowledge changed circumstances which rendered federal jurisdiction improper); *Bello v. CSX Corp.*, No. 07 Civ. 2931 (KMK) (GAY), 2007 WL 2687626, at *1 (S.D.N.Y. Sep. 11, 2007) (granting motion for attorneys' fees because defendants failed to carry their burden of improper joinder and such argument had no basis in law).

## CONCLUSION

For the foregoing reasons, MBIA respectfully requests that its motion to remand be granted, that Defendants be ordered to pay just costs and any actual expenses, including attorneys' fees, incurred by MBIA as a result of this removal, and that this action be remanded to the New York State Supreme Court.

DATED:      New York, New York
            August 5, 2009


                              QUINN EMANUEL URQUHART
                              OLIVER & HEDGES, LLP


                              By:  s/ Philippe Z. Selendy
                                  Peter E. Calamari
                                  Philippe Z. Selendy
                                  John H. Chun
                                  Calli Ray

                              51 Madison Avenue, 22nd Floor
                              New York, New York  10010-1601
                              Telephone:  (212) 849-7000
                              Fax:  (212) 849-7100
                              petercalamari@quinnemanuel.com
                              philippeselendy@quinnemanuel.com
                              johnchun@quinnemanuel.com
                              calliray@quinnemanuel.com

                              *Attorneys for Plaintiffs MBIA Insurance
                              Corporation and LaCrosse Financial Products,
                              LLC*


                              Of counsel:

                              Marc Becker
                              QUINN EMANUEL URQUHART
                                OLIVER & HEDGES, LLP
                              16 Old Bailey
                              London, England  EC4M 7EG
                              Telephone: (011)+44 20 7653 2000
                              Fax:  (011)+44 20 7653 2100